## DOLLINS v. BROOKS et al. (No. 2382.)

(Court of Civil Appeals of Texas. Texarkana. March 3, 1921.)

1. **Vendor and purchaser ⬅⟶267—Effect of an offer to pay as a tender held destroyed by coupling of condition.**

A grantee from whom the grantor seeks to recover the land conveyed because of default in payment of balance of purchase money, for which a vendor's lien was retained, destroys the legal effect, as a defensive tender, of his offer to pay the balance of the purchase money, by alleging conversion of machinery, asking that its value be deducted from amount still due, and offering to pay the remainder only.

2. **Vendor and purchaser ⬅⟶266(1)—Grantor retaining vendor's lien may recover land for default, notwithstanding undertaking to aid grantee to find a purchaser.**

Grantor who retained vendor's lien, though agreeing with the grantee after his default in payment, to undertake to find some one who would purchase the property and relieve the grantee from certain indebtedness, could, on a disagreement between them as to what indebtedness such a purchaser should assume, abandon effort to find a purchaser, and sue for recovery of the property for the default in payment.

3. **Vendor and purchaser ⬅⟶295—Judgment for recovery of land for default for which lien retained cancels note for price.**

A note from grantee to grantor, if given as part of the consideration of the purchase, for which vendor's lien was retained, is canceled by operation of law, by judgment in grantor's favor in action by him to recover the land for default in payment of balance of purchase price.

Appeal from District Court, Hunt County.

Action by S. B. Brooks and another against C. M. Dollins. From an adverse judgment, defendant appeals. Affirmed.

Crosby & Harrell, of Greenville, for appellant.

L. L. Bowman and Clark & Sweeton, all of Greenville, for appellees.

HODGES, J. This suit was filed in the court below by the First National Bank of Greenville and S. B. Brooks, cashier and a trustee for the bank, against the appellant, to recover a lot in the city of Greenville. The amended original petition contains two counts. The first is in the ordinary form of an action of trespass to try title, and concludes with the usual prayer for relief. The second count alleged, in substance, that in May, 1915, Brooks as the trustee for the bank sold and conveyed the property sued for to the appellant in consideration of a note for $15,000 due January 1, 1916, with interest at the rate of 8 per cent. per annum and the usual attorney's fees. A vendor's lien was reserved in both the deed and the note. In July, 1917, the appellant was indebted to the bank in the sum of about $18,612.45, most of which was secured by a vendor's lien on the property. The defendant being then unable to pay the indebtedness due the bank, it was agreed that he would surrender possession to the plaintiffs in consideration of the cancellation of all of his debts except one for $4,700.87. It was further agreed that appellant would convey another lot in the city of Greenville to the bank in consideration of $2,500, and that he would execute his note for $2,200.87, due October 27, 1917. It was also agreed and understood that the plaintiffs should undertake to sell the property to third parties and when they found a purchaser upon satisfactory terms the defendant would execute a deed, conveying all of his rights in the property to such purchaser. It is also alleged that in August, 1917, the plaintiffs made a contract with the firm of Murphy & Olar, whereby the latter were to purchase the property, the consideration being the assumption by them of an indebtedness existing against the property amounting in the aggregate to $15,046.70, this being exclusive of the debt for $2,200.87 above mentioned. In pursuance of that contract of sale Murphy & Olar went into possession of the property with the knowledge and consent of the defendant, and expended more than $1,000 in making improvements thereon. Those improvements were made with money advanced by the bank on the faith of the agreement, theretofore made with the defendant, that he would convey title to such purchaser; but when called upon to execute the deed of conveyance the defendant refused unless the bank would release him from the debt for $2,200.87. It is further alleged that the plaintiffs had not agreed to release the defendant from that obligation; that this was his personal indebtedness to the bank for money advanced which was not used in the operation of the gin. The plaintiffs asked for judgment against the defendant, removing any apparent claim, right, title, or interest he may have, or appear to have in the property, and for such other relief, general and special, to which they may be entitled.

In his special answer the appellant did not deny the sale and purchase of the property in controversy. He alleged however, that it originally consisted of an old gin plant, against which the bank held an indebtedness amounting to $10,055; that he agreed to take

<hr>

⬅⟶For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

the property and assume the payment of that debt; that the note was made for $15,000, a sum in excess of the real purchase price, in order to cover advances ,which the bank agreed to make thereafter to enable him to operate the gin. After having operated the gin until some time in 1917, and being unable to pay off the debt assumed, he entered into an agreement with Brooks, as the representative of the bank, whereby Brooks was to sell the property to some third party in consideration of the assumption by such party of the entire indebtedness which the defendant had incurred in the purchase and the operation of the gin. He alleged that—

"On or about September 1, 1917, Brooks, acting for and in behalf of the bank, proposed to him (defendant) that the gin plant be sold in liquidation of the balance due by defendant; that defendant thereupon agreed that, if he or the plaintiff Brooks could find a purchaser for the said property who would take the same and pay defendant back the total balance due by defendant, he (defendant) would execute a deed to such purchaser; that thereafter and in pursuance of said agreement to sell said property the plaintiff Brooks informed the defendant that he had sold same to Murphy & Olar, and presented a deed to defendant with the request that he execute the same."

He says that he refused to sign that deed because Brooks refused to cancel the entire indebtedness held against him by the bank. He further alleges that the house, machinery, and other appurtenances belonging to the property had been insured, and that on or about the 14th of November, 1917, the plant and houses and large part of the machinery were destroyed by fire; that the bank collected on the policies of insurance the sum of $11,898.55; that this money should have been credited on the account of the defendant previously described. He also charges that the plaintiffs converted to their own use a large portion of the machinery, aggregating something over $3,000. He avers that he had therefore offered and tendered to plaintiffs, and has at all times been ready and willing and now offers to pay plaintiffs, the balance due on said account after deducting all payments theretofore made by him, including the sums of money collected by the bank from the insurance companies and the value of the machines, houses, and salvage which were not destroyed by fire, and ,which had since been taken and converted by the plaintiffs. Defendant was unable to state the exact amount of the balance that would then be due, but offers to pay the bank whatever sum a correct auditing and accounting may show that balance to be. He concludes with a prayer that the plaintiffs be required to render an accounting; that the note sued upon be declared an accommodation paper, collateral security with vendor's

lien against the property, and that he have judgment over against the plaintiffs for the sum of $3,025.

At the conclusion of the testimony the court gave a peremptory instruction to the jury to return a verdict in favor of the plaintiffs for the lot sued for, without prejudice to the rights of the parties to litigate in the future appellant's liability for the debt of $2,200. The only assignment of error presented in this appeal is one which assails the correctness of that charge. It is claimed that the testimony was such as to support a finding that the plaintiffs in the suit had agreed to cancel that indebtedness as a condition upon which appellant should execute a conveyance to Murphy & Olar. It appears from the testimony that the appellant's refusal to execute the conveyance to Murphy & Olar ,was due to the refusal of Brooks to surrender the $2,200.87 note.

The facts about which there appears to be no dispute are, in substance, as follows: At the time stated by the appellees in their amended original petition they sold and conveyed the lot in controversy to the appellant. At that time there was standing on the lot a gin plant, which the bank had previously taken over in satisfaction of a debt. The consideration mentioned in the deed to the appellant was $15,000, evidenced by a note due January 1st thereafter, bearing interest at the rate of 8 per cent. per annum, and providing for the collection of attorney's fees in the usual form. It was admitted, however, in the trial, that this note exceeded the real purchase price which the appellant was to pay. It was made larger in order to cover advances that might thereafter be made by the bank to enable him to operate the gin. Appellant testified that he was to pay a sum equal to the debt ,which the bank previously held against the property. That, he says, amounted to $10,000, or a little more. After the purchase appellant took charge of the gin plant and operated it about two seasons. During that time he incurred other indebtedness to the bank but how much is not clearly shown. While he made payments upon his indebtedness from time to time, it does not appear that his aggregate debt was reduced, nor is it shown that he directed those payments to be applied in any particular manner. Some time about July, 1917, being unable to meet his indebtedness, and being unwilling to continue the operation of the gin under his contract of purchase, appellant entered into an agreement with Brooks, who was acting for the bank, that the property might be sold, and authorized Brooks to find a purchaser. Appellant testified that he agreed to convey his right to the property to such purchaser in consideration of a release by the bank of all debts then held against him which had been incur-

red in the purchase and the operation of the plant. He was unable to state definitely how much that indebtedness was. He was positive, however, that the note for $2,200.87 was a part of that indebtedness. He denied that he owed the bank any debt other than that which had been incurred in the purchase of the property or in the operation of the plant. Within a short time after the agreement above referred to Brooks had what appears to be an oral agreement with Murphy & Olar, by which they were to purchase the property and assume indebtedness amounting to $14,000, which did not include the $2,200.87 note before referred to. When the deed was prepared and presented to the appellant for his signature, conveying the property to Murphy & Olar, he refused to sign it unless the bank would cancel and surrender the $2,200.87 note. This the bank refused to do. It also appears from the testimony that about the 1st of November, 1917, the building and a portion of the machinery on the lot were destroyed by fire. It was agreed on the trial that the bank collected on the policies of insurance the sum of $11,788.50. How much remained of the original purchase-money debt does not clearly appear.

[1-3] If this were a suit for the sole purpose of specifically enforcing a contract to convey the property to Murphy & Olar there would be issues of fact as to the terms upon which that conveyance was to be made which should have been submitted to the jury. If Brooks agreed to cancel all indebtedness held by the bank against the appellant at that time as the consideration of that conveyance, clearly the appellees cannot demand a conveyance, or recover the property by virtue of that agreement, without complying with those terms. But assuming that the appellant's version of the agreement with Brooks is correct, it does not follow that there was presented an issue of fact which should have been submitted to the jury. This is a suit to recover possession of the lot, in which the appellant held only an equitable interest. The legal title remained in his vendor. It is undisputed that a part of the original purchase price was due and unpaid at the time this controversy arose.

The bank, therefore, in the absence of some special agreement, would have the right to sue for and recover the lot because of the appellant's default. He could defeat that right by paying the balance due of the purchase price, or by showing a contract to rescind upon different terms. While the appellant pleads an offer to pay the balance of the purchase money, he couples the offer with a condition which destroys its legal effect as a defensive tender. He alleges that the appellees have converted a large portion of the machinery, of which there was no proof on the trial, and asks that the value of that machinery be deducted from the amount still due, and offers to pay the remainder only. The evidence fails to show that he has ever at any time made an actual tender of the balance due. There is also an absence of any evidence of the value of the lot. If the appellant desired to defeat this suit upon equitable grounds, it devolved upon him to present facts which would enable the court to determine that question. This he has not done. Apparently the only defense he offers is the agreement, entered into with Brooks, which he claims involved the cancellation of his entire indebtedness to the bank. That agreement is now unavailable as a defense, unless it amounted to a contract on the part of the bank to take the property back upon the terms named. It appears from both his pleadings and the testimony of the appellant that Brooks did not undertake by that agreement to bind the bank to either rescind the original contract of sale or to buy the property back upon a different consideration. Brooks merely agreed to undertake to find some third party who would purchase the property and relieve the appellant from certain named indebtedness. According to appellant's testimony Brooks did not find such a purchaser, but demanded of appellant a deed to a purchaser upon terms different from those originally agreed upon. Under such conditions the bank had a right to abandon the effort to find a purchaser and sue for the recovery of the lot because of default in the payment of the purchase money. This it has done under the first count in the amended original petition. Under that pleading and the undisputed evidence the bank had a right to bring this suit and recover the possession of the lot. If the note for $2,200.87 is a part of the original purchase price, the judgment in favor of the plaintiffs operated as a matter of law to cancel it. If it was not a part of that consideration, the note remains an outstanding liability against the appellant. There is no proof that the note was a part of the purchase price.

The judgment is affirmed.